IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JESSICA W.,

                    Plaintiff,

                                        Civil Action No.
                                        5:19-CV-1427 (DEP)

         v.

ANDREW SAUL, Commissioner of Social
Security,

                    Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

LACHMAN & GORTON                    PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

FOR DEFENDANT:

HON. ANTOINETTE L. BACON            KEVIN M. PARRINGTON, ESQ.
Acting United States Attorney for the   Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the supplemental security income ("SSI") benefits for which she has applied. For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.      BACKGROUND

Plaintiff was born in February of 1982 and is currently thirty-nine years of age. She was thirty-four years old at the time of her application for benefits in August of 2016. Plaintiff stands five-foot two or three-inches in height, and has weighed at various times between one hundred eighty and two hundred twenty pounds. Plaintiff resides in the vicinity of Endicott, New York, in a trailer with her boyfriend.[1]  While plaintiff has four children ranging in ages (at the time of the hearing) from eleven to twenty-one,

---

[1]      There is indication in some of the medical records that plaintiff may also reside with a brother, as well as her boyfriend's brother.

2

they do not regularly reside with her.[2]

Plaintiff has an eighth-grade education, and was enrolled in special education while in school. Plaintiff is right-handed and is able to drive and take public transportation.

According to her function report, plaintiff stopped working on or about in February 1, 2016. Prior to that time, she worked in various positions, including as a cook, a laborer, and a home health aide.[3]

Physically, plaintiff suffers from degenerative disc disease ("DDD"), primarily at the L5-S1 level; headaches, accompanied by phonophobia, photophobia, and vertigo, and attributed to a 2006 motor vehicle accident; hand issues; gastroesophageal reflux disease ("GERD"); and asthma. Plaintiff has undergone several hand surgeries, including an open reduction of her right ring finger in August of 2014 to repair a fracture; a silicone implant and arthroplasty in her right ring finger in June of 2015; and removal of a mass in her left thumb in September of 2016. Those surgeries were all performed by Dr. Jon Loftus, who has informed plaintiff that he is unable to provide any further treatment for her hand conditions.

---

[2]     Plaintiff's oldest child spends weekends with her.

[3]     During her hearing, plaintiff testified that she currently works approximately four hours per week for a home health aide company.

In addition to Dr. Loftus, plaintiff has also treated with Adirondack Community Physicians, up until June 2016; Family Health Network of Central New York, from September of 2016, where she has received treatment from Dr. Douglas Rahner, Dr. Nicole Villapiano, and Nurse Practitioner ("NP") Eleanor Klein; Upstate Pain Management, where she has seen Dr. Shannon Michel; and, on one occasion, with Dr. Taseer Minhas, of Neuro Medical Care Associates PLLC.[4]

Plaintiff also suffers from mental impairments, including depression and anxiety. Although she is medicated for those conditions, she has not undergone any specialized treatment, care, or hospitalization for them.

Plaintiff has been prescribed several medications over time including, though not limited to, Gabapentin, Topamax, Effexor, Clonidine, Topiramate, Tizanidine, Neurontin, and Seroquel.

Plaintiff enjoys a fairly wide range of interests and activities of daily living. She can shower, bathe, dress, cook, clean, do laundry, shop, and use public transportation. Plaintiff also watches television, listens to the radio, socializes, plays on her tablet, drives, cares for her dogs and other

---

[4]  According to a note entered by Dr. Minhas, dated October 3, 2018, plaintiff was seen by him once for migraines, but she failed to follow-up with him after that session.

pets, does puzzles, and enjoys arts and crafts.[5]  Plaintiff is a heavy smoker, consuming more than ten cigarettes per day. In the past she has also undergone treatment for drug and alcohol abuse.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before the Agency

Plaintiff applied for SSI payments under Title XVI of the Social Security Act on or about August 5, 2016.[6,7]  In support of that application she alleged a disability onset date of January 1, 2016, and claimed disability based upon a learning disability, arthritis, and a mass in her hand.[8]

---

[5]    Prior to moving to her current residence approximately one year ago, plaintiff also mowed her lawn and drove a four-wheel recreational vehicle.

[6]    The exact date on which plaintiff filed her application is not clear from the record. Although the Administrative Law Judge ("ALJ") and plaintiff's attorney agreed at the administrative hearing held in this matter that plaintiff filed her application on August 5, 2016, another point the record reflects that plaintiff filed the application on August 26, 2016. In light of my decision, the date of the filing does not affect the outcome of the case.

[7]    The onset date was later amended to August 5, 2016, the date of plaintiff's application, in accordance with the regulations applicable to SSI benefits. 20 C.F.R. § 416.335; see Calixte v. Colvin, No. 14-CV-5654 (MKB), 2016 WL 1306533, at *26 (E.D.N.Y. Mar. 31, 2016) ("The relevant period for purposes of plaintiff's claim for SSI benefits is from the date on which the plaintiff's application is filed to the date of the ALJ's decision.") (citations omitted).

[8]    Plaintiff apparently made two previous applications for Social Security benefits. The first was denied on December 17, 2018, in a decision rendered by ALJ John Ramos. Plaintiff's request for a hearing in connection with the second application was denied as untimely on July 23, 2007, by ALJ Robert E. Gale.

A hearing was conducted on October 30, 2018, by ALJ Yvette N. Diamond, to address plaintiff's application for SSI payments. Following that hearing, ALJ Diamond issued an unfavorable decision on November 23, 2018. That opinion became a final determination of the agency on September 23, 2019, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In her decision, ALJ Diamond applied the familiar, five-step sequential test for determining disability. At step one, while noting that plaintiff's records do show some earnings for 2016 and 2017, ALJ Diamond concluded that plaintiff had not engaged in substantial gainful activity since August 5, 2016. At step two, the ALJ found that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including DDD, hearing loss, status-post left hand surgery, obesity, headaches, a learning disorder, anxiety, and depression.

At step three, ALJ Diamond examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed

conditions, specifically considering Listings 1.04, 2.10, 11.02B, 12.04, 12.06, and 12.11.[9]

ALJ Diamond next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform light work, as defined by the controlling regulations,[10] with the following exceptions:

> [T]he claimant can lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six to eight hours; and sit for six of eight hours. The claimant can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, but cannot climb ladders. She can frequently reach, handle, and finger. The claimant requires the option to stand for half of an hour and then sit for ten to fifteen minutes as needed throughout the workday

---

[9]     The ALJ also considered plaintiff's condition under Social Security Ruling 02-1p, relating to obesity.

[10]     By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

while remaining on task. She cannot have
concentrated exposure to bright lights, loud noise or
hazards. The claimant is limited [to] simple, routine
tasks and can have occasional contact with
supervisors, coworkers, and the general public. She
can perform low stress work, which is defined as
work requiring only occasional decisionmaking and
occasional changes in the work setting.

At step four ALJ Diamond concluded that plaintiff did not have any

past relevant work to consider. She then proceeded to step five noting,

initially, that if the medical vocational guidelines ("the Grids"), 20 C.F.R. Pt.

404, Subpt. P, App. 2, were applied and plaintiff could perform a full range

of the demands of light work, a finding of no disability would be directed by

Grid Rule 202.17. With the benefit of testimony from a vocational expert,

who was presented with a hypothetical closely aligned with the RFC

finding, ALJ Diamond found that plaintiff is capable of performing available

work in the national economy, including as an electronics worker, a small

parts assembler, and an electrical accessories assembler. Based upon

that finding, ALJ Diamond concluded that plaintiff was not disabled at the

relevant times.

C.    <u>This Action</u>

Plaintiff commenced this action on November 19, 2019.[11] In support of her challenge to the ALJ's determination, plaintiff raises several arguments, contending that (a) it was error for the Appeals Council to fail to grant controlling weight to the opinion of Dr. Rahner, one of plaintiff's doctors, or, alternatively, to explain the weight given to his opinion after considering the factors dictated by the controlling regulations and case law relating to treating source opinions; (b) the Appeals Council erred in concluding that Dr. Rahner's opinion was not likely to change the outcome; (c) the determination at step five is unsupported because the vocational expert's testimony concerning the number of available jobs in the three positions identified related to a broader category that included multiple other jobs, many of which plaintiff would be unable to perform; (d) the ALJ's RFC finding is unsupported, because it failed to include a restriction in overhead reaching; and (e) the RFC finding failed to include a limitation addressing plaintiff's migraine headaches and the resulting inability to remain on task and keep to a regular schedule without

---

[11]    This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

excessive absenteeism.

Oral argument was conducted in this matter, by telephone, on January 27, 2021, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.     Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §

423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. § 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* § 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts her physical or mental ability to perform basic work activities. *Id.* § 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* § 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70

F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. § 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of her past relevant work. 20 C.F.R. § 416.920(e). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work. *Id.* § 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

1.    The Appeals Council's Obligations Regarding the Opinion of Dr. Rahner, a Treating Source.

a.    Dr. Rahner's Opinion and the Parties' Contentions

After ALJ Diamond issued her decision on November 23, 2018, plaintiff's counsel received a written medical opinion from Dr. Rahner, one

of plaintiff's doctors, which was dated November 29, 2018.[12]  Plaintiff

submitted the opinion to the Appeals Council before it acted on her

request to review the ALJ's determination.[13]  When it denied review, the

Appeals Council "did not exhibit" Dr. Rahner's opinion and stated only that

"[the opinion] did not show a reasonable probability that it would change

the outcome of the decision."

In support of her challenge to the Commissioner's determination,

plaintiff argues that, at least in this circuit, and certainly within the Northern

District of New York, it is firmly established that, when a treating source

opinion is submitted to the Appeals Council after issuance of a decision by

---

[12]    The circumstances surrounding the submission of Dr. Rahner's opinions are anything but clear. At the hearing before ALJ Diamond, which was conducted on October 30, 2018, plaintiff's counsel stated that he had, in his possession, a document from Dr. Rahner and that he had just received it. That document, however, was never exhibited by the ALJ. Counsel further represented that he was awaiting additional statements from two additional sources – Dr. Loftus and Dr. Thomas – but no mention was made of a requested statement from Dr. Rahner. Yet in the cover letter to the Appeals Council submitting Dr. Rahner's statement, which bears the date November 29, 2018, counsel asserted that the opinion was requested on August 24, 2018. At the close of the hearing, the ALJ left the record open until November 13, 2018, to permit acquisition of the two opinions from Dr. Loftus and Thomas, neither of which appears to have been received.

[13]    After a decision has been issued by an ALJ, but before the Appeals Council acts on a request for review, a claimant may submit additional evidence to the Commissioner. 20 C.F.R. § 416.1470. *See Perez v. Chater,* 77 F.3d 41, 44 (2d Cir. 1996). The only limitations set forth in the controlling regulation are that the evidence must be new and material, and further must relate to the period in issue. 20 C.F.R. § 416.1470(a)(5); *see Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (citing *Perez*, 77 F.3d at 45). The Commissioner does not challenge Dr. Rahner's opinion as failing to meet these requirements.

an ALJ, the Appeals Council must apply the treating source rule as set forth in the governing regulations and applicable case law, and explain whether the opinion is being given controlling weight or, if not, articulate the weight afforded to the opinion and the reasons for the weight assigned. Plaintiff contends that a generic statement merely indicating that a claimant's request for review has been denied does not satisfy the Appeals Council's obligations in this regard.

The Commissioner counters that the cases relied upon by plaintiff were wrongly decided and resulted from a misreading of the pertinent regulations and the cases upon which the principle being asserted is bottomed. According to the Commissioner, the obligation on the part of the Appeals Council to explain the weight assigned to a treating source opinion arises only when that body addresses the facts of the case and makes a ruling that is then deemed to be the final determination of the Commissioner.

### b.    The Treating Source Rule

The new evidence in this case is a questionnaire completed by Dr. Rahner, who is an undisputed treating source. Had Dr. Rahner's medical source statement been submitted prior to the issuance of ALJ Diamond's decision, it would have been subject to the treating source rule. Under that

rule, as an opinion from plaintiff's treating physician regarding the nature and severity of her impairment, Dr. Rahner's opinion would ordinarily have been entitled to considerable deference, provided that it was supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with other substantial evidence. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).[14] His opinion would not have been controlling, however, if it was contrary to other substantial evidence in the record, including the opinions of other medical experts.[15] *Burgess*, 537 F.3d at 128; *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

---

[14]    The regulation governing treating physicians, as it existed prior to a 2017 amendment, provides as follows:

> Generally, we give more weight to medical opinions from your treating sources . . . . If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply [various] factors . . . in determining the weight to give the medical opinion.

20 C.F.R. § 416.927(c)(2). The new pertinent regulations, applicable to claims filed on or after March 27, 2017, abrogated the treating source rule. *See* 20 C.F.R. § 416.920(c).

[15]    Importantly, if the record includes contradictory medical evidence, resolution of any conflict is properly entrusted to the Commissioner. *Burgess*, 537 F.3d at 128; *Veino*, 312 F.3d at 588.

Under the former treating source rule, if an opinion from a treating source is not given controlling weight, the decisionmaker must apply several factors to determine what degree of weight should be assigned to the opinion, including (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence supporting the treating provider's opinion; (4) the degree of consistency between the opinion and the record as a whole; (5) whether the opinion is given by a specialist; and (6) other evidence that has been brought to the attention of the decisionmaker. 20 C.F.R. § 416.927(c); *Burgess*, 537 F.3d at 129; *Halloran*, 362 F.3d at 32. When a treating physician's opinions are repudiated, the decisionmaker must provide reasons for the rejection. 20 C.F.R. § 416.927(c)(2); *Halloran*, 362 F.3d at 32. The failure to apply the appropriate legal standards for considering a treating physician's opinions constitutes a basis for reversal of an adverse determination, as is the decisionmaker's failure to provide reasons for rejecting the opinions. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *accord, Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

c.    The Appeals Council's Consideration of the New Opinion

As was previously noted, in denying plaintiff's request for review of ALJ Diamond's decision, the Appeals Council referenced the new medical

17

evidence from Dr. Rahner stating, "[w]e find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." The only reasons provided for denying review were explained as follows:

> We considered the reasons [submitted by plaintiff in disagreement with the ALJ's decision] and exhibited them on the enclosed Order of the Appeals Council. We found that the reasons do not provide a basis for changing the Administrative Law Judge's decision.

At the forefront of plaintiff's challenge in this case is her contention that the Appeals Council was under a duty to accord controlling weight to Dr. Rahner's questionnaire or, if not assign it controlling weight, then explain the weight given and the reasons for that weight, as required by the treating source rule. It was error, the argument continues, for the Appeals Council to dismiss a treating source opinion by summarily denying the plaintiff's request for review of an adverse ALJ's decision.

Undeniably, there are several cases courts within the Second Circuit that support plaintiff's position. *See, e.g., Hissin v. Comm'r of Soc. Sec.*, No. 17-CV-1264, 2019 WL 4253899, at *3 (W.D.N.Y. Sept. 9, 2019); *Patrick M. v. Saul*, No. 18-CV-0290, 2019 WL 4071780, at *7 (N.D.N.Y. Aug. 28, 2019); *Durrant v. Berryhill*, No. 16-CV-6781, 2018 WL 1417311, at *4 (W.D.N.Y. Mar. 22, 2018); *Djuzo v. Comm'r of Soc. Sec.,* No. 13-CV-

0272, 2014 WL 5823104, at *4 (N.D.N.Y. Nov. 7, 2014); *Seifried v. Comm'r of Soc. Sec.*, No. 13-CV-0347, 2014 WL 4828191,at *4 (N.D.N.Y. Sept. 29, 2014); *James v. Comm'r of Soc. Sec.*, No. 06-CV-6180, 2009 WL 2496485, at *10 (E.D.N.Y Aug. 14, 2009). To date, the Second Circuit has offered no guidance regarding the issue, and the court specifically declined to consider the question as recently as 2015. *See Lesterhuis*, 805 F.3d at 89 ("[B]ecause we hold that the ALJ's decision was not supported by substantial evidence, we need not consider [the plaintiff's] alternative argument that the Appeals Council has an independent obligation to provide 'good reasons' before declining to give weight to the new, material opinion of a treating physician submitted only to the Appeals Council and not to the ALJ.").

Notwithstanding the decision in *Liesterhuis*, plaintiff maintains that the Second Circuit has, in fact, ruled on this issue, citing *Newbury v. Astrue*, 321 F. App'x 16 (2d Cir. 2009). That case (which was issued as an unpublished summary order and therefore is not entitled precendential effect, *see, e.g., Lebron v. Sanders*, 557 F.3d 76, 77 n.2 (2d Cir. 2009)) is distinguishable from this action, however, because it involved two treating source opinions – one that was before the ALJ and a second that was submitted to the Appeals Council after the ALJ rendered a determination.

*Newbury*, 321 F. App'x at 1. The Second Circuit concluded that both the ALJ and the Appeals Council failed to "state any specific reasons for rejecting [the treating physician's] opinions." *Id.* at 2. While I acknowledge the reference to the ALJ *and* the Appeals Council, suggesting that, perhaps, the court found that the Appeals Council was duty-bound to explain its reasons for rejecting a treating physician's opinion when it denied review, the opinion predates the Second Circuit's decision in *Lesterhuis*, which clearly regarded the issue as an open one, at least in this circuit.

One of the other circuit courts to specifically address the issue has concluded that, when the Appeals Council merely denies review of an ALJ decision, it is under no obligation to provide an analysis under the treating source rule. *Vallejo v. Berryhill*, 849 F.3d 951, 955-56 (10th Cir. 2017). In *Vallejo*, the Tenth Circuit reasoned that the Appeals Council is obligated to "give good reasons" for the weight afforded to a treating physician's opinion only when it issues a "notice of determination or decision" under 20 C.F.R. § 416.927(c)(2). *Vallejo*, 849 F.3d at 955. According to the Tenth Circuit Court of Appeals, because the Appeals Council did not render a "determination or decision" under 20 C.F.R. § 416.927(c)(2) (because it "simply denied review") "it was not required to follow the same

rules for considering opinion evidence as the ALJ followed." *Vallejo*, 849 F.3d at 956.

The apparent genesis of the line of cases from district courts within this circuit supporting plaintiff's position and finding such an obligation appears to be a magistrate judge's report and recommendation in *Shrack v. Astrue*, 608 F. Supp. 2d 297 (D. Conn. 2009), which was summarily adopted by the assigned district judge.[16] In that case, "[a]lthough the Appeals Council identified the additional new evidence[, which included opinions of a treating physician,] it did not specifically address any of it in its decision denying review, instead stating that '[it] found no reason under [its] rules to review the [ALJ]'s decision.'" *Shrack*, 608 F. Supp. 2d at 302. Citing to *Snell v. Apfel*, 177 F.3d 128 (2d Cir. 1999), the magistrate judge issued the sweeping proclamation that "the treating physician rule applies to the Appeals Council when the new evidence at issue reflects the findings and opinions of a treating physician." *Shrack*, 608 F. Supp. 2d at 302.

---

[16] In 2005, another district court in this circuit remanded a case to the agency where a treating physician submitted an updated report after the ALJ rendered his decision and the Appeals Council made "no mention of this new evidence in its denial of review" and did not "provide the type of explanation required under the treating physician rule." *Farina v. Barnhart*, No. 04-CV-1299, 2005 WL 91308, at *5 (E.D.N.Y. Jan. 18, 2005). The court in *Farina* did not cite to any authority in support of its decision.

With due respect to my many colleagues that have followed *Shrack*, I believe that the case was wrongly decided, and that *Snell* is readily distinguishable. In *Snell*, rather than merely denying review of an ALJ decision, the Appeals Council addressed the merits of the matter *sua sponte*, and reversed the decision of the ALJ to grant benefits. *Snell*, 177 F.3d at 129-30. In that case, the Appeals Council proactively considered the record and issued a merits-based decision and, in doing so, was plainly obligated to apply the treating source rule, just as an ALJ must when making an initial determination. *Id.* at 133. When an Appeals Council simply denies review, however, the focus for a reviewing court is upon the ALJ's decision, which represents the final determination of the agency, 20 C.F.R. § 416.1481, although, admittedly, a reviewing court must consider the entire record, including new evidence submitted to the Appeals Council, to determine whether the ALJ's findings are supported by substantial evidence. *Perez*, 77 F.3d at 46.

The Commissioner's position on this issue draws support from the regulation addressing the evaluation of medical opinions. The version in effect at the time plaintiff's application was filed provided that the agency "will always give good reasons in [the] notice of *determination or decision* for the weight [given] to your treating source's medical opinion." 20 C.F.R.

§ 416.927(c)(2) (emphasis added).[17]  Under the agency's procedures, an Appeals Council's denial of a plaintiff's request for review is neither a "determination" nor a "decision." When a plaintiff seeks review by the Appeals Council, that body "may deny, or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to the [ALJ]." 20 C.F.R. § 416.1467. As can be seen, the regulation itself explicitly provides that only when the request to review is granted does the Appeals Council issue a "decision." *Id.*; *see also* 20 C.F.R. § 416.1481 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision.").

Based upon the foregoing, I respectfully decline to follow those cases that have proliferated from *Shrack*, and instead conclude, as did the Tenth Circuit in *Vallejo*, that, when the Appeals Council merely denies a request for review of a determination, it is under no obligation to explain the weight given to a treating source opinion submitted as new evidence following an ALJ's decision.

### 2. Dr. Rahner's Opinion Would Not Likely Change the Outcome

Plaintiff also contends that the Appeals Council erred in concluding

---

[17]     As was previously noted, the regulations have been amended for applications filed on or after March 27, 2017.

that the new opinion from Dr. Rahner was not likely to change the outcome of the decision. At the outset, I disagree with the premise of this argument because it does not accurately reflect the controlling law on the matter. As was noted above, when "the Appeals Council denies review, the ALJ's decision becomes the [Commissioner's] final decision," and it is this "final decision of the [Commissioner that] is subject to judicial review." *Perez*, 77 F.3d at 44. Accordingly, plaintiff's contention that the court has the authority to review the Appeals Council's conclusion regarding the new medical opinion is mistaken. Because "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision," *Perez*, 77 F.3d at 45, however, I have proceeded with a review of the new medical opinion to consider whether, in light of its addition to the record, ALJ Diamond's determination is supported by substantial evidence.

The opinion of Dr. Rahner are configured in a check-box form entitled "Questionnaire." Aside from setting forth diagnoses, including "right sciatica-type pain" and "mood disorder" with "signs of bipolar disorder," the form has little substance, instead merely posing questions that can be answered by checking the appropriate box. Such forms are

notoriously vague, and generally afforded little evidentiary weight. *See, e.g., Halloran*, 362 F.3d at 32; *see also Joseph K. v. Comm'r of Soc. Sec.*, No. 17-CV-0748, 2018 WL 3716780 at *6 (N.D.N.Y. Aug. 2, 2008) (concluding that the treating physician's opinion, which was issued "in the form of a standardized checkbox form" and "does not contain any explanation[s] for the bases of [his] determinations," was "only marginally useful for purposes of creating a meaningful and reviewable factual record" (internal quotation marks omitted)).

The form completed Dr. Rahner is also incomplete and internally inconsistent. For example, when asked how often plaintiff would be "off task" as a result of her conditions, he checked both "[m]ore than 15% but less than 20%" and "[g]reater than 20% but less than 33%." Similarly, when queried concerning absenteeism Dr. Rahner checked both "two days per month" and "three days per month." Responding to the off-task question, Dr. Rahner explained his answer by noting that it is "[d]ifficult to say[.] [R]easonable to say she would be off task but difficult to quantify." Responding to the absenteeism question, he responded, "Again difficult to quantify."

Dr. Rahner's opinion is also inconsistent with other evidence in the record. In responding to the questionnaire and addressing plaintiff's

"sciatica type pain," Dr. Rahner referred to Magnetic Resonance Imaging ("MRI") testing. However, both he and another treating physician, Dr. Villapiano, previously stated that the MRI of plaintiff's lumbar spine was "normal." Addressing plaintiff's mental condition, Dr. Rahner based his opinions on a mood disorder despite the many treatment notes showing no cognitive limitations such as deficits in memory or problems sustaining attention in concentration, and routinely showing intact judgment and insight, intact memory, and normal thought content.

Dr. Rahner's opinion concerning plaintiff's mental condition is also inconsistent with the opinions of Dr. Shapiro, who, after conducting a thorough consultative examination, concluded that plaintiff has only mild limitations in performing complex tasks, consistently relating to and interacting well with others, and dealing with stress, and no other limitations. Dr. Rahner's opinion is further inconsistent with the findings of Dr. Kamin, an agency non-examining consultant, who, after reviewing the evidence available to him at the time, opined in September 2016 that plaintiff's mental impairments were not severe.

For the foregoing reasons, I find that Dr. Rahner's opinion does not show a reasonable probability of changing the ALJ's decision and that the ALJ's decision is supported by substantial evidence.

### 3.    The ALJ's Step Five Determination

Plaintiff next argues that the ALJ's determination at step five, at which the Commissioner bears the burden of proof, is not supported by substantial evidence. Specifically, she contends that the ALJ relied on improper and inaccurate job statistical information put forth by the vocational expert who testified at the hearing.

It is well-established that elicitation of testimony from a vocational expert is a proper means of fulfilling the agency's burden at step five of the disability test to establish the existence of jobs in sufficient numbers in the national and regional economy that plaintiff is capable of performing. 20 C.F.R. § 416.966(e); *see also Bapp v. Bowen*, 802 F.2d 601, 604-05 (2d Cir. 1986); *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); *Dwyer v. Apfel*, 23 F. Supp. 2d 223, 229-30 (N.D.N.Y. 1998) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). Use of hypothetical questions to develop the vocational expert's testimony is also permitted, provided that the questioning precisely and comprehensively includes each physical and mental impairment of the claimant accepted as true by the ALJ. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in

support of a finding of no disability. *Varley*, 820 F.2d at 779.

I agree with the Commissioner that the ALJ properly relied on the testimony of a vocational expert. The expert testified that there are 37,700 jobs available in the national economy in the electronics worker category, 65,700 jobs available as a small parts assembler, and 37,000 jobs in the electrical accessories assembler field. These numbers are more than adequate to support a finding of no disability. *See Debiase v. Saul*, No. 19-CV-0068, 2019 WL 5485269, at *10 (D. Conn. Oct. 25, 2019) (collecting cases). The vocational expert stated that her opinions are consistent with the Dictionary of Occupational Titles ("DOT") and are based upon her more than thirty-five years of experience.

When cross-examined by claimant's attorney, the vocational expert stated that she relied on the Department of Labor employment statistics (for 2017) for a source of job numbers, and also factored in the Standard Occupational Classification ("SOC") codes to come up with a "reasonable national estimate." It is true that the vocational expert did state "yes" in response to the question "and so the estimates correspond to the SOC codes?" As the Commissioner argues, however, when the numbers are analyzed, it is clear the expert did not include all jobs within the respective

SOC codes associated with the three positions in the numbers stated.[18] I note, moreover, that the vocational expert testified to different numbers of available jobs within the three categories identified, strongly suggesting that the expert referred to the number of jobs in the specific job categories, rather than in the corresponding SOC codes.

Having carefully reviewed the vocational expert's testimony, I find that the ALJ's step-five determination is supported by substantial evidence, and reject plaintiff's argument to the contrary.

### 4. The ALJ's RFC Finding

In her final argument, plaintiff raises two challenges to the ALJ's finding. She maintains that the RFC should have included limitations in overhead reaching and maintaining a schedule.

A claimant's RFC represents a finding of the range of tasks she is capable of performing notwithstanding her impairments. 20 C.F.R. § 416.945(a); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013). An RFC determination is informed by consideration of "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3); *Tankisi*,

---

[18] According to the Occupational Information Network ("O*Net"), a resource developed under the sponsorship of the United States Department of Labor, a "Crosswalk search" matches the DOT codes for "electronics worker" and "assembler, small products" to a single SOC code, "production workers, all other." According to the O*Net there are 214,200 jobs in that SOC code, a number much higher than the 37,700 and 65,700, respectively, cited by the vocational expert.

521 F. App'x at 33.

To properly ascertain a claimant's RFC, an ALJ must assess plaintiff's exertional capabilities, such as her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 416.945(b). Nonexertional limitations or impairments, including impairments that result in postural and manipulative limitations, must also be considered. *Id.* When rendering an RFC determination, an ALJ must specify those functions that the claimant "is capable of performing; conclusory statements regarding [her] capacities are not sufficient." *Martone*, 70 F. Supp. 2d at 150; *accord, e.g., Bump v. Comm'r of Soc. Sec.*, No. 15-CV-1077, 2016 WL 6311872, at *3 (N.D.N.Y. Oct. 28, 2016). Like the other aspects of the decision, an ALJ's RFC determination must be supported by substantial evidence. *Ferraris*, 728 F.2d at 587; *accord, Bump*, 2016 WL 6311872, at *3.

a.   Overhead Reaching

Plaintiff's argument regarding overhead reaching is based upon a statement by NP Eleanor Klein, to the effect that plaintiff is limited to no overhead lifting "per pain management." That reference, in turn, apparently stems from a note by Dr. Shannon E. Michel, DO, simply stating, "recommend ok to work but no lifting overhead or >25 lbs[.]" It is noted, however, that plaintiff was examined by Dr. Kalyani Ganesh on

September 27, 2016. In her medical source statement, Dr. Ganesh found "[n]o gross physical limitations." During the course of her examination, moreover, Dr. Ganesh found a full range of motion of plaintiff's shoulders, elbows, forearms, and wrists bilaterally, and did not note any difficulties with plaintiff's extremities. The weight assigned to these potentially conflicting opinions was properly entrusted to the ALJ. *See Camarata v. Colvin*, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) ("[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rest upon adequate findings supported by evidence having rational probative force." (internal quotation marks omitted)). With respect to this limitation, the ALJ's finding is supported by substantial evidence.[19]

### b. Off Task and Attendance

While somewhat unclear, it appears that plaintiff is basing her asserted limitations regarding being off task and attendance on her headaches. In her decision, the ALJ concluded, at step two, that plaintiff's headaches are severe. At step three she rejected any notion that the headaches were presumptively disabling in accordance with the listings,

---

[19]    It is noteworthy that Dr. Rahner was asked to opine regarding plaintiff's ability to reach, but did not do so, stating "unable to evaluate."

including Listing 11.02B. She did, however, consider the plaintiff's headaches in crafting her RFC limitations by including a requirement that she not have concentrated exposure to bright lights, loud noise, or hazards that could potentially trigger headaches. Further addressing the headaches, ALJ Diamond concluded that plaintiff's imaging failed to show any abnormalities, nor was there any indication in the record of plaintiff seeking urgent or emergency care for her headache symptoms. The ALJ also limited plaintiff's exposure to stress, which is consistent with the fact that she mentioned to her neurologist, Dr. Minhas, that stress was an exacerbating factor. The record reveals that neurological examinations of plaintiff were relatively normal, including during her one visit to a neurologist in January 2018. The ALJ's findings are also consistent with Dr. Minhas' opinion that plaintiff's conditions would not diminish her work pace.

In sum, it is clear that the ALJ considered plaintiff's allegations of severe headaches and included limitations addressing those headaches in her RFC finding. To the extent plaintiff argues that greater limitations were warranted, I conclude that the ALJ's determination is supported by substantial evidence.

IV.    SUMMARY AND ORDER

Although presenting an issue that awaits guidance from the Second Circuit Court of Appeals, I disagree with plaintiff's assertion that, when denying a request for review in the face of an opinion from a treating source submitted after the ALJ's decision, the Appeals Council must explicitly consider and discuss the weight to be given to such an opinion. I further find, with regard to the remaining issues raised by plaintiff, when considering the record in its entirety, including the new evidence, that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings is GRANTED, and plaintiff's complaint is hereby DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:     March 2, 2021
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge